#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TANYA MARIE CHEEKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-145-PJC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

#### OPINION AND ORDER

Plaintiff, Tanya Marie Cheeks, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Cheeks' applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*  For the reasons discussed below, the Commissioner's decision is **REVERSED AND REMANDED** .

#### Procedural History

Cheeks filed her applications for disability insurance benefits and supplemental security income benefits with a protective filing date of May 7, 2012. [R. 12, R. 125-133]. She alleged onset of disability as of April 13, 2012.  [R. 125, 128].  The applications were denied initially and on reconsideration.  [R. 65-71].  An administrative hearing was held before Administrative Law Judge Gene M. Kelly ("ALJ") on June 27, 2013. [R. 24-64].  By decision dated September 13, 2013, the ALJ found that Cheeks was not disabled.  [R. 12-20].  Cheeks requested review of the decision, and on January 20, 2015, the Appeals Council denied review.  [R. 1-3]. Thus, the

decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481. Cheeks timely sought review by this court.

## Claimant's Background

Cheeks was 51 years old on the alleged date of onset of disability and 53 on the date of the ALJ's final decision. She graduated from high school, has an associate degree in business arts and formerly worked as a restaurant manager and a customer service representative. [R. 31-34]. She claims to have been unable to work since April 13, 2012, as a result of pain in her knees, lower back and calves. [R. 35].

The last job she worked was insurance claims processing at Blue Cross/Blue Shield; she was placed there through a temp agency, and worked approximately six weeks. [R. 32]. She quit April 13, 2012, because she wasn't able to learn the job quickly enough. *Id.* She had missed a couple of days of work because her knees were hurting. [R. 48]. From 2005 until 2012, she worked customer service at call centers. [R. 33]. Before that, she was the manager of a catering service that provided food for a daycare. [R. 34].

Cheeks has a constant stabbing pain in the calf of her right leg. [R. 36]. She has arthritis in both knees. [R. 37]. She can't sit for a long time, and she can't walk very far. *Id.* She does not use braces, wraps or a cane. [R. 37]. She cannot squat; however she can bend over at the back and touch her toes. [R. 38, 41]. She is able to drive and drives her daughter to work and home—approximately 400 miles a week. [R. 39]. She has lower back pain; it also limits how long she can stand or sit. [R. 40]. She has not had surgery on her back, nor has it been recommended. *Id.* She takes Diclofenac for the pain. *Id.* As a result of the pain in her lower back, she cannot cook like she used to, unless she sits down part of the time. *Id.* She can go up and down a flight of stairs, but it hurts and she has to walk slow. [R. 41]. Her doctors have not

given her any restrictions on how much weight she should lift or carry. *Id.* She can sit for about an hour before she needs to stand up and can stand for about 20 minutes before she has to sit down. [R. 42]. She can walk for a block. *Id.* Rainy days adversely affect her back and knees. *Id.* She uses arthritis ointment to relieve the pain in her back and her knees. [R. 43-44]. She had a problem with depression after losing her husband, but she is on medication and attends group therapy, and feels like she has overcome the depression and anxiety. [R. 43].

At home she can do the dishes, sweep, make her bed and do laundry; she does not dust, mop floors, vacuum or cook. [R. 44]. She shops sometimes and leans on a grocery cart for support. [R. 37, 44]. She looks after her two grandchildren once in a while. [R. 45]. She watches television, reads for pleasure, goes to church and visits friends and family. *Id.* One or two days a week the pain in her knees is so bad she just sits at home and does nothing. [R. 51].

Cheeks does not think she could return to a customer service call center job because the headsets are connected by a wire to the computer and the wire is only long enough to allow her to stand up—not move around. [R. 48-49].

Between 2006 and 2012, she did not see any physicians because she couldn't afford to pay for visits. [R. 51-52]. Since then, she has seen a physician's assistant at the Morton Clinic, at a cost of $25 per visit, but she missed a visit June 5 because she didn't have money to pay the fee. [R. 52].

Cheeks saw Ashley Farmer, P.A., at Morton Clinic on August 8, 2012, September 7, 2012 and December 1, 2012. [R. 226-229 (Ex. 3-F), R. 231-242 (Ex. 5-F)]. In the first visit, her chief complaint was pain in her knees and back; she reported her arthritis had been worsening over the past year; it is constantly painful; use of a heating pad helps; she was taking naproxen or ibuprofen 4-5 pills 4-5 times a day; walking and sitting for long periods makes the pain worse.

[R. 227]. She was assessed as having generalized osteoarthritis with knee and back pain; she had effusion in her knees, along with decreased range of motion and crepitus. [R. 228]. Mobic was prescribed and she was counseled to quit taking over the counter NSAIDs at the dose and frequency she had been taking them. *Id.* The second visit was for a mammogram and breast exam. [R. 232-242]. The third visit was for treatment of arthritis. [R. 231-232]. She reported she was taking the Mobic, which provided some relief, but some days she was still supplementing with ibuprofen over-the-counter once or twice a day. [R. 231]. Her NSAID was changed to Diclofenac and the PA encouraged her not to supplement with over the counter NSAIDs; instead she should return to the clinic. [R. 231-232].

In an undated form, Cheeks reported taking BuSpar for Anxiety, Prozac for depression and Diclofenac for arthritis (all prescribed in September 2012 by Joyce L. Bumgardner, M.D., at Creoks Behavior Health in Sapulpa). [R. 198 (Exs. 10-E, 11-E)].

Edie Ann Carey, D.O. performed a consultative examination of Cheeks on June 23, 2012. [R. 211-217 (Ex. 1-F)]. She assessed claimant as having arthritis (no overt arthritic changes), obesity (BMI 39.6) and tobacco abuse. [R. 212]. Claimant ambulated with a stable gait at an appropriate speed without use of assistive devices and had normal range of motion . [R. 211-216].

DDS medical consultant Luther Woodcock, M.D., completed a physical RFC assessment of Cheeks on July 19, 2012. [R. 218-225 (Ex. 2-F)]. His diagnoses were arthritis, obesity and tobacco abuse. He concluded she could lift up to 20 pounds occasionally and 10 pounds frequently; stand and walk six hours in an eight hour workday, sit six hours in an eight hour workday. [R. 219]. He found no postural, manipulative, visual, communicative or environmental limitations. [R. 220-22].

4

Kim Rowlands, M.D., completed a case analysis of Cheeks' claim on November 6, 2012. [R. 230 (Ex. 4-F)]. She noted Cheeks had made a new patient visit to Morton, concluded findings from that visit had not changed since the consultative examination and concurred in the adoption of a light RFC as written. *Id.*

The vocational expert testified the claimant had past experience as a restaurant manager (light strength demand and an SVP of seven); in customer service at call centers (sedentary and an SVP of three); and as claims processor (sedentary and an SVP of four). [R. 54-55]. In his first hypothetical, the ALJ told the expert to assume the individual has the physical capacity to perform sedentary and light work, lift and carry up to 20 pounds, stand and walk six hours in eight-hour workday and sit six hours in an eight-hour day with normal breaks. [R. 56]. She would be able to alter her position from time to time to relieve symptomology from a variety of sources that produces mild to moderate chronic pain by standing up for a minute and sitting down for a minute. [R. 55-56]. The ALJ noted depression and anxiety but stated there would be no specific functional restrictions placed . [R. 56]. The vocational expert opined that given this RFC, claimant would be able to perform her past work. [R. 57]. In the second hypothetical, the ALJ added restrictions of no squat, occasional climb, bend, stoop, kneel, crouch, crawl, operate foot controls, reach to the rear or reach behind, and avoid cold work environment. [R. 59]. The vocational expert opined claimant would still be able to return to all past work. *Id.* In the third hypothetical, the ALJ instructed the expert to assume all of claimant's testimony to be substantiated by third-party medical evidence, and asked if she would be able to do past work. [R. 60]. The expert testified she would not be able to do past work. [R. 60-61].

After the administrative hearing, the ALJ sent Cheeks to a laboratory for x-rays and bloodwork on August 5, 2013, and to Subramaniam Krishnamurthi, M.D., for a comprehensive

5

internal medicine exam, on August 8, 2013. [R. 243-248 (Ex. 6-F), R. 249-250 (Ex. 7-F), R. 251-265 (Ex. 8-F)].

The x-ray of the lumbar spine showed multi-level spondylotic degenerative disc disease; the x-ray of the right knee showed degenerative joint disease, joint effusion and possible intra-articular loose body versus articular spur along the anterior tibial plateau; the x-ray of the left knee showed degenerative joint disease, but no apparent effusion; and the x-ray of the right calf showed degenerative joint disease with possible intra-articular loose body versus articular spur within the anterial tibial plateau . [R. 246-247]. The ANA was negative and rheumatoid factors were all within normal range. [R. 249-250].

Dr. Krishnamurthi examined Cheeks on August 8, 2013. [R. 252]. He diagnosed her as having chronic back pain, chronic knee pain bilateral, morbid obesity and depression. [R. 254]. He concluded she had a normal gait and normal range of motion of the cervical spine, lumbosacral spine, both upper extremities and both lower extremities. *Id.* In his Medical Source Statement, he concluded she could lift and carry up to 50 pounds occasionally and up to 20 pounds frequently; sit for one hour at a time for up to six hours in an eight-hour workday; stand for one hour at a time for up to two hours in a workday; and walk for one hour at a time for up to two hours in a workday. [R. 259-260].

Counsel for Cheeks objected to Dr. Krishnamurthi's diagnosis because the doctor did not have the x-rays at the time of the examination. [R. 199-R. 201 (Ex. 12-E)].

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his

6

"physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence,

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### Decision of the Administrative Law Judge

In his decision, the ALJ found that Cheeks met insured status requirements through September 13, 2013, and, at Step One, that she had not engaged in any substantial gainful activity since her alleged onset date of April 13, 2012. [R. 14]. He found at Step Two that Manly had severe impairments of degenerative disc disease, degenerative joint disease and obesity. *Id.* He found that her impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. [R. 15]. At Step Three, he found that her impairments did not meet any listing. [R. 16]. He found that Cheeks had the RFC to perform light work. *Id.* He limited her to lifting/carrying up to 20 pounds occasionally and 10 pounds frequently; standing/walking six hours in an eight-hour workday; and sitting for six hours in an eight-hour workday, except she must alternate positions from time to time. *Id.* At Step Four, the ALJ determined that Cheeks could perform past relevant work as a restaurant manager and customer service representative and that the work does not require the performance of work-related activities precluded by the claimant's RFC. [R. 19]. Additionally, he stated, "The vocational expert testified that the job duties *as a painter and production line assembler* could be performed within the above sated residual functional capacity, on a function-by-function basis, both as the claimant performed them and as normally performed in the national economy," and

8

he concurred with the statement. [R. 19].[2]  (emphasis added).  The ALJ found that Cheeks had not been disabled from April 13, 2012, through the date of his decision.  *Id*.

## Review

On appeal, Cheeks argues the ALJ erred at step four by (1) formulating an RFC that ignored the limitations imposed by Dr. Krishnamurthi's opinions and (2) failing to make specific findings regarding the physical and mental demands of her past work which are implicated by her limitations.

The Commissioner admits the ALJ erred in (1) assessing Cheeks' RFC, (2) finding that Cheeks can perform work as it is actually performed and (3) finding that she can perform her past relevant work as "a painter and production line assembler."  [Dkt. #17 at 4-5].  Nevertheless, she contends the errors are harmless because the vocational expert's testimony supports a conclusion that Cheeks can do customer service work as it is generally performed.  *Id.* at 5.

## Analysis

Step four of the sequential analysis is comprised of three phases.  In *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), the Tenth Circuit outlined the requirements of the three phases.  First, the ALJ has to make specific RFC findings, both physical and mental, and relate those findings to the evidence.  *Id.* at 1023-24.  Second, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work."  *Id.* at 1024.  The Tenth Circuit noted that special care must be taken in cases with mental impairments.  *Id.*  At phase three, the ALJ makes findings about the claimant's ability to meet the demands of her past relevant work.  *Id.* at 1024-25.

---

[2] The VE did not testify about the job duties of a painter or a production line assembler, nor did the ALJ make any alternative findings that the claimant could perform other jobs, including "painter and production line assembler." Thus, the reference to painter and production line assembler appears to be a scrivener's error.

9

As previously noted, the consultative physician, Dr. Krishnamurthi, completed a medical source statement indicating Cheeks could sit, stand and/or walk for no more than one hour at a time; sit for six hours in an eight-hour workday; stand for no more than two hours in an eight-hour workday; and walk for no more than two hours in an eight-hour workday. [Ex. 8-F]. The ALJ gave the doctor's opinion "great weight," noting it was consistent with the evidence of record and with the physical examination of June 23, 2012. (Ex. 1-F). [R. 18]. Yet, on its face the RFC he formulated (standing and/or walking six hours in an eight-hour workday; and sitting for six hours in an eight-hour workday, except she must alternate positions from time to time) conflicts with the limitations imposed by Dr. Krishnamurthi. The ALJ neither acknowledged the physician's opinion concerning limitations nor explained why he did not adopt the restrictions.

"An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). The ALJ is not required to discuss every piece of evidence, but "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The problem here is that although an ALJ is entitled to resolve conflicts in the record, the ALJ did *not* identify any conflict. To the contrary, he stated that Dr. Krishnamurthi's opinion was consistent with the evidence of record and with the physical examination of June 23, 2012. [R. 18].

The Commissioner asserts the error is harmless because an RFC for light work encompasses the sedentary limitations imposed by Dr. Krishnamurthi, and she argues at length that the record is sufficient to sustain a finding of nondisability at step four. *See* Dkt. #17 at 5-7. However, "this court may not create or adopt post-hoc rationalizations to support the ALJ's

decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). The court will not usurp the ALJ's function by making findings that are not contained in his decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1328-30 (10th Cir. 2011) (*post hoc* rationale is improper because it usurps agency's function of weighing and balancing evidence in the first instance.) Moreover, the detailed alternate sit/stand limitations described by the doctor potentially preclude performance of the exertional demands of a full range of *either* a light or sedentary classification. In addition, the errant references to "painter and production line assembler" cause further confusion. As a result of these errors, the court cannot conclude the ALJ's decision was supported by substantial evidence. *See Hamlin*, 365 F.3d at 1214. Accordingly, the Commissioner's decision must be reversed and remanded for further consideration consistent with this decision.

Because the court finds that reversal is required based on the ALJ's failure to explain why he did not incorporate Dr. Krishnamurthi's sedentary limitations into his RFC, the court does not take a position on Cheeks' argument that the ALJ failed at step four to develop the record regarding the mental and physical demands of her past work. However, the court notes that under the regulations, a finding of non-severity alone would not support a decision by the ALJ to exclude from his RFC assessment consideration alleged mental impairments, since the ALJ found "mild" restrictions in three of the four functional areas. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Dorman v. Astrue*, 368 Fed. Appx. 864, 865-66 (10th Cir. 2010) (unpublished). Accordingly, at stage two, the ALJ, in compliance with *Winfrey*, should make findings regarding the physical and mental demands of the claimant's past work.

The court takes no position on the merits of Cheeks' disability claim and "[no] particular result is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003) (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

For the reasons set forth above, the Commissioner's decision is hereby **REVERSED AND REMANDED.**

Entered this 5th day of August, 2016.

_____
Paul J. Cleary
United States Magistrate Judge